The STATE of Ohio, Appellee,

v.

HART, Appellant.

[Cite as *State v. Hart* (1988), 61 Ohio App.3d 37.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 55082.

Decided Dec. 29, 1988.

*John T. Corrigan,* prosecuting attorney, and *Robert H. Grano, Jr.,* for appellee.

*White & Milano* and *Jay B. White,* for appellant.

NAHRA, Judge.

Lascelle Hart, defendant-appellant, appeals his convictions for carrying a concealed weapon with a violence specification and having a weapon while under disability with a violence specification.

Prior to trial, defendant filed a motion to suppress evidence found in a search of the automobile in which he was a passenger. Because the case was being tried to the court, the trial judge decided to rule on the motion after hearing the trial testimony.

At trial, Officer Ollie Rogers testified that on December 9, 1986 in the early morning, he and his partner Carl Walker were on routine patrol in the area of East 131st and Gay Avenue when he observed a vehicle in which he saw a lot of hands moving, with one passenger very close to the other one. The officers began to follow the car. When the vehicle came to a stoplight, they observed the individuals switch seats. Officer Rogers further testified that when the light changed, the officers decided to make a routine traffic stop. They approached the car and a female, Sarienya Thomas, in the driver's seat, rolled down the window and, upon questioning, stated that nothing was wrong. Officer Rogers then shined his flashlight first in the back and then in the front of the car and observed a gun underneath the female's foot. The gun was seized and is the basis of defendant's charges. Officer Rogers identified the defendant as being an occupant in the automobile. Officer Rogers stated that no traffic offenses were committed prior to stopping the automobile. He testified that the vehicle was stopped because of suspicions raised by observing the occupants switching seats. Officer Rogers stated that he felt that maybe the occupants were doing something criminal or a party was holding someone hostage or somebody could be in trouble.

Officer Samuel Joel Walker essentially corroborated the testimony of Officer Rogers, though he testified that he observed the occupants switching places when the police car first passed the suspect's vehicle.

The court denied defendant's motion to suppress, ruling that the officers had probable cause to stop the automobile and that once the automobile was stopped, the weapon was in a position to be seen.

Sarienya Thomas then testified for the defense. She stated that the automobile belonged to her sister. She testified that she and the defendant had been sitting in the car in her driveway from about 10:30 p.m. to about 3:00 a.m. or 3:45 a.m. when she decided to go for a ride. Thomas was driving the car. She stated that she and the defendant were "fooling around" in the car. She testified that they were sitting close together, but denied that they switched seats. Thomas further testified that she did not see a gun in the car and she did not know where the gun came from.

The defendant was found guilty of carrying a concealed weapon and having a weapon while under disability, both with specifications.

The defendant timely appeals, raising three assignments of error.

I

Appellant's first assignment of error is:

"There is constitutionally insufficient evidence to sustain appellant's convictions for carrying a concealed weapon and having weapons while under disability."

Appellant challenges the court's verdict in regard to his convictions for carrying a concealed weapon and having a weapon while under disability as being based upon insufficient evidence.

Where the record shows that a conviction was based upon sufficient evidence, an appellate court may not reverse the verdict of the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. A reviewing court must be satisfied that there is sufficient evidence on all elements of the offense charged to satisfy reasonable minds of the guilt of the defendant. *Sandoffsky v. State* (1928), 29 Ohio App. 419, 163 N.E. 634.

Evidence may be direct or circumstantial. "Circumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt." *State v. Kulig* (1974), 37 Ohio St.2d 157, 66 O.O.2d 351, 309 N.E.2d 897, syllabus.

To sustain a conviction for carrying a concealed weapon, the state had to prove beyond a reasonable doubt that the defendant knowingly carried or had

a weapon concealed on his person or concealed ready at hand. R.C. 2923.12. To sustain a conviction for having a weapon while under disability, the state had to prove beyond a reasonable doubt that the defendant knowingly had or carried a firearm. R.C. 2923.13.

Appellant argues that the circumstantial evidence produced at trial was not irreconcilable with the reasonable theory that the gun belonged to Thomas's sister or someone else who had been in the car.

Based upon our review of the record, we agree that the circumstantial evidence presented by the state was not enough to infer, beyond a reasonable doubt, that the gun belonged to appellant. The gun was found in a car that belonged to the sister of the driver, on the driver's side, in which appellant was a passenger. No other evidence connected appellant with the gun. This circumstantial evidence is not irreconcilable with a reasonable theory of the appellant's innocence.

Accordingly, appellant's first assignment of error has merit.

## II

■ Appellant's second assignment of error is:

"The trial court erred by overruling appellant's motion to suppress evidence when police seized the evidence as the result of an illegal investigative detention and thereby deprived appellant of his constitutional rights as guaranteed by the Fourth and Fourteenth Amendments."

Appellant argues that his initial detention and the subsequent search of the car and seizure of the gun were constitutionally invalid.

The United States Supreme Court has consistently held that an investigative stop can be made on less than probable cause to arrest, but there must be reasonable suspicion that someone may be involved in criminal activity. In justifying the investigative stop, the "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906. As the court stated in *Adams v. Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612:

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response * * *. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts

known to the officer at the time." *Id.* at 145–146, 92 S.Ct. at 1923, 32 L.Ed.2d at 616–617.

These cases establish that there must be at least a reasonable and articulable suspicion that a vehicle and/or its driver is in violation of the law to justify an intrusion upon an individual.

Our review of the record demonstrates that the police were justified in initially detaining appellant as, according to their testimony, they suspected, by the actions of the occupants of the vehicle, that the occupants were engaged in criminal activity or an occupant was in distress. This was a reasonable suspicion based upon the facts known to the officers.

However, once the police ascertained that there was nothing wrong with the occupants, their inquiry should have ended there. Absent specific and articulable facts that further detention was reasonable, the police were not justified in continuing the detention and searching the vehicle. See *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237. This case is analogous to *State v. Chatton, supra,* in which the Ohio Supreme Court held that a police officer, who detained an individual for a suspected traffic violation, does not have authority to further detain that individual to determine the validity of his driver's license once the officer no longer has reason to suspect that individual is committing a traffic violation, absent some specific and articulable facts that the detention was reasonable.

Based upon the foregoing, the evidence seized in the search of the vehicle is constitutionally inadmissible. Therefore, the trial court erred in denying appellant's motion to suppress.

Appellant's second assignment of error is well-taken.

### III

Appellant's third assignment of error is:

"The trial court erred by overruling appellant's motion for new trial or in the alternative by not holding a hearing on the motion for new trial."

Appellant argues that the trial court erred in overruling appellant's motion for a new trial.

The record in the instant case fails to reveal appellant filed a motion for a new trial. The record contains neither the motion nor any entry by the court concerning the motion. In its review, this court is confined solely to the record on appeal. App.R. 12. Accordingly, appellant's third assignment of error must fail.

The judgment of the court of common pleas is reversed and the cause is remanded for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

MARKUS, J., concurs.

KRUPANSKY, P.J., concurs in part and dissents in part.

KRUPANSKY, Presiding Judge, concurring in part and dissenting in part.

I respectfully dissent from the majority analysis of defendant's first and second assignments of error and would affirm the judgment of the trial court.

Defendant's conviction was based upon sufficient evidence. The test for sufficiency of the evidence follows:

"* * * [T]he test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. *Jackson v. Virginia* (1979), 443 U.S. 307, 319 [99 S.Ct. 2781, 2789, 61 L.Ed.2d 560]; *United States v. Lincoln* (C.A. 8, 1980), 630 F.2d 1313, 1316; *Dorman v. State* (Alaska 1981), 622 P.2d 448, 453; *Ridley v. State* (1976), 236 Ga. 147, 149, 223 S.E.2d 131, 132; *State v. Sorgee* (1978), 54 Ohio St.2d 464 [8 O.O.3d 452, 377 N.E.2d 782]; *State v. Robinson* (1955), 162 Ohio St. 486 [55 O.O. 388, 124 N.E.2d 148]." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720.

Violations of both R.C. 2923.12 and 2923.13 require a culpable mental state of "knowledge." The majority unpersuasively contends the state failed to prove the requisite element of knowledge.

The culpable mental state of knowledge is set forth in R.C. 2901.22, which provides in pertinent part:

"(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

In the case *sub judice*, Thomas testified the gun did not belong to her and she had never seen the gun before trial. No witnesses including the owner of the car testified regarding whether the gun had been placed in the car prior to defendant and Thomas borrowing the automobile. The evidence revealed the

police noted the occupants of the vehicle were seated very close together with a great deal of arm movement as though they were attempting to switch places. Thomas testified she and defendant were "fooling around," "feeling" each other and defendant continued his seductive ways during the drive. Defendant could have placed the gun on the floor prior to or during this activity, so that the fully loaded weapon would not discharge and cause injury to either one or both of the occupants. It should also be noted defendant occupied the driver's seat before the vehicle was stopped by the police and before the switch took place. The defendant could have placed the weapon on the floor while driving after the police vehicle had been observed and then convinced Thomas to change places with him. Defendant was cognizant of his prior convictions and knew he was not supposed to be carrying a gun.

Furthermore, the weapon was concealed within the meaning of R.C. 2923.12.

" ' * * * [A] weapon is concealed if it is so situated as not to be discernible by ordinary observation by those near enough to see it if it were not concealed, who would come into contact with the possessor in the usual associations of life; but that absolute invisibility is not required, since ordinary observation does not extend to a search unusually careful, thorough or detailed, made because of suspicion that contraband which is not visible by ordinary observation may in actuality be present.' In accord *State v. Youngblood* (Dec. 5, 1979), Hamilton App. No. C–790018, unreported." *State v. Davis* (1984), 15 Ohio App.3d 64, 15 OBR 93, 472 N.E.2d 751, quoting *State v. Pettit* (1969), 20 Ohio App.2d 170, 173–174, 49 O.O.2d 200, 201–202, 252 N.E.2d 325, 327–328. In *Davis*, the Hamilton County Court of Appeals held a shotgun placed under a seat was concealed even though the shotgun could be seen by a person standing inside the door when the automobile door was open.

"It is not necessary to prove that the [weapon] was carried in such manner or in such location as to give absolutely no notice of its presence under any kind of observation. Rather, it is sufficient to support a conviction of carrying a concealed weapon to prove only that ordinary observation would give no notice of its presence. This is a question of fact to be resolved by the trier of fact. * * * " *State v. Coker* (1984), 15 Ohio App.3d 97, 98, 15 OBR 127, 128, 472 N.E.2d 747, 749. In *Coker*, the Summit County Court of Appeals held that a shotgun carried in an automobile between two front bucket seats at night was concealed although the butt of the shotgun was protruding above the "hump" between the front seats.

In the case *sub judice*, the revolver was found at night on the floor of the car by the officers. The officers saw the gun only after they approached the vehicle and only after they shined their flashlights into the car. Furthermore,

one officer testified the gun was hidden under the foot of one of the occupants of the car. Under the circumstances, whether the revolver was concealed was a factual issue upon which reasonable minds could differ. The fact finder found the gun was concealed.

In addition, defendant argues the state failed to prove defendant's possession of the firearm. Defendant's argument is unpersuasive. The firearm was found fully loaded and within four feet of defendant and within his unobstructed reach. The trial court found defendant had knowledge of the gun. The trial court could have easily found defendant had physical control of the weapon and therefore had a weapon within the meaning of R.C. 2923.13. See *State v. Hardy* (1978), 60 Ohio App.2d 325, 14 O.O.3d 289, 397 N.E.2d 773. In addition, counsel stipulated to defendant's prior convictions as set forth in the indictment. This stipulation along with the other evidence establishes defendant knew he had a weapon while under disability. Therefore, construing the evidence in a light most favorable to the state, a rational trier of fact could find defendant had a firearm within the meaning of R.C. 2923.12 and 2923.13. Consequently, the conviction was sustained by sufficient evidence. See *State v. Martin, supra.*

The fact finder, in this instance the trial judge, was free to believe all, none or only part of the testimony of any witness. Obviously, the fact finder believed only parts of Thomas's testimony. He believed the gun was neither hers nor her sister's, the owner of the vehicle, nor did he believe the gun had been left in the vehicle since there was no testimony on this point. The trial judge certainly did not believe Thomas's testimony when she stated the gun was not the defendant's. This would not be the first time a girlfriend has tried to protect her boyfriend. The fact finder must view the evidence in its totality and this appellate court should not interfere with the verdict of the fact finder.

Furthermore, the majority's analysis of the search of the vehicle is flawed. The majority admits the police officers had a reasonable articulable suspicion the occupants of the automobile were engaged in criminal activity; thus, the stop was justified. However, the majority then incorrectly asserts the police ascertained no criminal activity had taken place prior to their making a brief unobtrusive search by shining their flashlights into the automobile.

The police initially approached the automobile because they had a reasonable suspicion the movements of the occupants were indicative of any one or combination of the following: (1) one occupant of the automobile was being held against his or her will, (2) one occupant was drunk, (3) one occupant was in some form of physical distress, or (4) the occupants had stolen the car or

committed another crime and once they had spotted the police had decided to switch places in the automobile most probably to better effectuate an escape.

When the police approached the vehicle, Thomas stated to one of the officers nothing was wrong. Despite this somewhat dubious assertion by one of the occupants, the police, based upon a totality of the circumstances, had a reasonable articulable suspicion to initiate an unobtrusive protective search for the safety of both the officers and the occupants of the automobile.

"1. The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances. (*State v. Freeman* [1980], 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044, paragraph one of the syllabus, approved and followed.)

"2. Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, syllabus.

The majority's reliance on *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237, is clearly unpersuasive. In *Chatton*, a police officer had stopped a vehicle he believed did not have any license plates. Upon approaching the vehicle and before initiating any discussion with the occupants, the officer observed a temporary license tag displayed in the window. The officer, before conducting his protective search, removed the occupants from the vehicle. The issue before the court was whether the officer had the right to continue the search once he no longer had any reason to suspect a traffic violation had occurred.

In the case *sub judice*, the officers still had a reasonable articulable suspicion an offense had been committed once they approached the automobile and began to converse with the driver. The defendant could have been holding Thomas at gunpoint when she told the police nothing was wrong. Thomas could have been a victim in a hostage situation and could have been instructed by defendant to not reveal the situation to the police under an immediate threat of harm. Furthermore, both occupants may have been attempting to escape detection for a crime previously committed. Thomas's statement, therefore, did not remove the reasonable articulable suspicion. In addition, unlike *Chatton*, the search of the vehicle *sub judice* was relatively unobtrusive. The officers merely shined their flashlights into the automobile. They discovered the firearm prior to ordering the occupants out of the automobile and prior to the officers having physically entered the vehicle to more thoroughly search for weapons and other evidence of criminal activity.

Under the circumstances, the record reflects the police had a reasonable articulable suspicion drawn from the surrounding facts and circumstances to make the initial stop. Once the police stopped the Chevrolet and in order to maintain the status quo and insure their safety they had the right to ask the occupants for identification and to shine their flashlights into the automobile to check for weapons. See *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

Accordingly, defendant's first and second assignments of error are not well-taken and should be overruled. Defendant's conviction should be affirmed.