**CITY OF TOLEDO**

v.

**ELKIN.**

Toledo Municipal Court, Ohio.

No. TRC93–22201–0101.

Decided Aug. 6, 1994.

*John T. Madigan,* Chief Prosecutor, and *Mary Ellen Heben,* Assistant City Prosecutor, for the plaintiff.

*George R. Royer,* for the defendant.

Thomas J. Osowik, Judge.

The court finds that this case came on for determination by the court of defendant Beverly Elkin's motion to suppress, after hearing on March 11, 1994

and supplemental memorandum submitted by the defendant on April 11, 1994 and on April 22, 1994.

The underlying facts of the case are as follows. On September 6, 1993 at approximately 8:40 p.m., Toledo Police Officers Gomez and Wizgen responded to an assault complaint. Upon arriving at the complainant's residence, the victim/complainant indicated that the perpetrator of the offense, known to the victim, was operating her vehicle and, in fact, was driving down an alley as the officers and complainant spoke. The complainant identified the defendant's vehicle and pointed the vehicle out to the officers.

Based upon this information, the officers approached the vehicle. Upon speaking with the defendant, Officer Wizgen observed some signs of alcohol intoxication, namely, the smell of alcohol on her breath, glassy eyes, and slurred speech. The defendant was then asked to perform some sobriety tests. The defendant was given the following tests: recitation of the alphabet, one-leg stand, walk and turn, finger to nose, and the horizontal gaze nystagmus. According to the officer's observations, the defendant failed the one-leg stand, walk and turn, and the horizontal gaze nystagmus.

The defendant essentially argues that her motion to suppress should be granted on two grounds: (1) the initial stop made by the police officers was unlawful, and (2) the officers lacked probable cause to make the arrest.

The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated * * *." These provisions grant to the citizens of Ohio what is among our most cherished of constitutional rights.

"The basic purpose * * * [of these constitutional provisions] is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Court* (1967), 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930, 935. The fundamental nature of this guarantee has long been noted:

"No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pacific RR. Co. v. Botsford* (1891), 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734, 737.

As Justice Brandeis expressed in words which continue to animate and inspire our vision of the great privilege of American citizenship as much today as they did almost seventy years ago:

"The makers of our constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men. To protect that right, every unjustifiable intrusion by the government on the privacy of the individual, whatever the means employed, must be deemed a violation of the Fourth Amendment." *Olmstead v. United States* (1928), 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944, 956 (dissenting).

The United States Supreme Court has set the standard for determining the propriety of an automobile stop. In *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660, the court held, at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 673:

"We hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment."

■ Thus, if there exist specific articulable facts that a criminal violation has occurred, or is occurring, the vehicle may be stopped and the driver detained for further investigation. The propriety of an investigative stop must be determined in light of the totality of the surrounding circumstances. *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044.

The defendant argues that the officers did not possess the requisite articulable and reasonable suspicion that she was engaged in any unlawful activity. This argument is premised on the assertion that information obtained from an informant's tip does not possess the necessary degree of trustworthiness and requires independent corroboration by the arresting officer. The defendant contends, therefore, that the stop was unjustified and constituted a violation of her rights under the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution.

As support, the defendant cites the opinion of the Sixth District Court of Appeals in *State v. Haupricht* (Aug. 3, 1990), Lucas App. No. 1–89–202, unreported, 1990 WL 109965, in which the court held that when an officer stops and detains an individual based upon a police dispatch bulletin, that officer may rely on that bulletin to seize the person; however, in order for the seizure to be

constitutional, the bulletin must be issued on the basis of articulable facts which gave rise to the conclusion that there was reasonable suspicion that the individual was involved in some criminal activity. That case involved complaints about two intoxicated persons, possible patrons, at an Ohio Turnpike Plaza and, ultimately, two persons whom the officers approached, without any observation of unusual behavior.

The case before the court is factually distinguishable: police were called to respond to an assault and to make out a report on an assault. Upon arrival, the complaining witness, the minor victim's mother, indicated to the police officers that the suspect in the assault was several doors down. Although the witnesses who were interviewed did not know the suspect's name, they knew where she was and knew that she was about to leave the house upon the officers' arrival. In fact, while the officers were interviewing the witnesses, the suspect (defendant herein) appeared and drove a vehicle down the alley. The defendant, who was operating the vehicle, was pointed out by the victim's mother as the suspect.

■ The defendant is correct in her general assertion that, under the "totality of the circumstances" analysis, an informant's veracity, reliability, and basis of knowledge remain highly relevant in determining the value of that informant's report. See *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. However, it is important to distinguish between a victim/witness informant and the police informant or an anonymous tipster.

Anyone who gives information to the police might be termed an "informant." But the courts have interpreted the word "informant" much more narrowly, using it to describe an anonymous tipster or " 'a person in the underworld or a person on its periphery; in its confidence, or so much "a part of the scenery" to the criminal that this person is in a particularly good position to know the story of a crime committed, the story of criminal business done, being transacted or proposed for the future; or at least he gets significant bits of information which, when placed in context by the investigator, will demonstrate an accurate picture of crime.' " 1 LaFave, Search and Seizure (1987) 611, Section 3.3, quoting Harney & Cross, The Informer in Law Enforcement (2 Ed.1968) 40.

■ Contrast the informant as defined above with the "average citizen who by happenstance finds himself in the position of a victim of or a witness to criminal conduct and thereafter relates to the police what he knows as a matter of civic duty. One who qualifies as the latter type of individual, sometimes referred to as a 'citizen-informer,' is more deserving of a presumption of reliability than the informant from the criminal milieu. As Justice Harlan pointed out in *United States v. Harris* [ (1971), 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723], the ordinary citizen who has never before reported a crime to the police may, in fact,

be more reliable than one who supplies information on a regular basis. "The latter is likely to be someone who is himself involved in criminal activity or is, at least, someone who enjoys the confidence of criminals.'" (Footnotes omitted.) LaFave, *supra*. Indeed, the police are entitled to assume the veracity of the alleged victim or witness (absent special circumstances which should put them on guard). 3 LaFave, Search and Seizure (1987) 460, Section 9.3(d). Thus, the officers were entitled to assume the veracity and reliability of the victim of the alleged assault.

■ At the hearing on the motion to suppress, both officers testified regarding the reason they stopped the defendant's vehicle, as set forth in the statement of facts above. Based upon that testimony, the court finds that the officers possessed a reasonable and articulable suspicion that the occupant of the vehicle had committed an assault. The stop was therefore reasonable under the Fourth Amendment, where the victim made a contemporaneous identification of the vehicle and where the vehicle contained a driver/occupant who had been involved in the alleged criminal activity.

The essence of the defendant's second argument is that the officers lacked probable cause for arrest and that the arrest was therefore unlawful. The defendant maintains that the officers' testimony at the hearing on the motion to suppress was insufficient to show that probable cause existed to arrest the defendant for driving while under the influence of alcohol.

The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, recognizes that it may be the essence of good police work to adopt an intermediate response. A brief investigative stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. See, also, *State v. Hart* (1988), 61 Ohio App.3d 37, 40–41, 572 N.E.2d 141, 143–144.

■ However, such an investigation must be justified by some objective manifestation that the person stopped is, "or is about to be, engaged in criminal activity." *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 628. If circumstances attending an otherwise proper stop should give rise to a reasonable suspicion of some other illegal activity, different from the suspected illegal activity that triggered the stop, then the vehicle and the driver may be detained for as long as that new articulable and reasonable

suspicion continues, even if the officer is satisfied that the suspicion that justified the stop initially has dissipated.

▉ The officers testified at the hearing that as they discussed the allegations of the assault, the defendant remained seated in her vehicle, they could smell intoxicants, and her speech was slurred. Upon asking her to exit the vehicle, Officer Wizgen asked her to perform various field sobriety tests. The defendant completed the ABC's after several attempts, failed the one-leg stand and heel to toe and, according to the officer, failed the horizontal gaze nystagmus. After these indications, the defendant was arrested and charged with the offense before the court.

The court finds, therefore, that under the totality of the circumstances analysis of *Illinois v. Gates, supra,* the factors present at the time of the stop and arrest of the defendant provided the officers with sufficient reasonable and articulable suspicion of wrongdoing.

Based upon the foregoing findings of fact, the defendant's motion to suppress is found not well taken and is DENIED. This case shall be referred to the Office of the Assignment Commissioner for assignment of a trial date.

*So ordered.*