The state of Ohio appeals the Ross County Court of Common Pleas' judgment suppressing evidence obtained from Shirley J. Hatfield. The state contends that the trial court erred in finding that the police officers did not have reasonable suspicion to stop Hatfield. We agree, because the officer pointed to specific, articulable facts which, taken together with rational inferences from those facts, reasonably warranted Hatfield's detainment. The state also asserts that the trial court erred in finding that the officers did not have reasonable suspicion to request that Hatfield open her mouth. We disagree, because the state failed to provide any facts from which we could reasonably infer that Hatfield was armed and presented a threat to the officers and the totality of the circumstances did not support a finding that the officer had probable cause to search Hatfield. Finally, the state argues that the trial court erred in finding that Hatfield did not voluntarily consent to a search. We disagree, because the totality of the circumstances do not support that Hatfield's consent was an independent act of free will.
Accordingly, we affirm in part and reverse in part the judgment of the trial court.
 I.
In January 1998, the Ross County Grand Jury indicted Hatfield on one count of possession of cocaine, in violation of R.C.2925.11(C)(4). Hatfield entered a plea of not guilty and moved the court to suppress the evidence that formed the basis of the indictment.
At the hearing on the motion, Capt. Jeffrey L. Keener and Detective Roger Moore testified that on November 8, 1997, they obtained a warrant authorizing them to search John Burgin for drugs. The officers, dressed in plain clothes and in an unmarked police car, went to the area of Seventh and Mechanic Streets in Chillicothe, an area frequented by Burgin and known for its high drug activity.
It was dark but, from the street lights, the officers saw Burgin approach a blue-green Dodge Neon from an alley. Burgin circled to the other side of the car, which immediately pulled out of the alley and headed east on Seventh Street. The officers, suspicious that Burgin was one of the several passengers occupying the Neon, contacted a marked police cruiser to stop the car.
Officer Lighten responded to Capt. Keener's call and stopped the Neon for failure to use a turn signal. Capt. Keener, Det. Moore, and Det. Goble approached the Neon and identified themselves as police officers. From his position at the driver's side door, Capt. Keener immediately noted that Burgin was not in the car. However, Capt. Keener recognized Hatfield, a passenger in the rear driver's side seat, as a known drug abuser. Upon seeing Capt. Keener, Hatfield quickly put something in her mouth.
Capt. Keener testified that, based upon his police training and experience, he believed that Hatfield was trying to conceal crack cocaine in her mouth. Capt. Keener shined a flashlight on Hatfield and ordered her to open her car door, which Hatfield eventually did. Capt. Keener then repeatedly commanded Hatfield to open her mouth and spit out the crack cocaine. When Hatfield opened her mouth, Capt. Keener retrieved a crumbly white substance from Hatfield's tongue. A field test of the substance confirmed that it was cocaine. The officers then placed Hatfield under arrest.
The trial court found that the officers did not have a reasonable suspicion to detain Hatfield. The trial court reasoned that when the officers determined that Burgin was not in the car, the justification to investigate ended. The trial court further found that Hatfield's gesture toward her mouth did not establish a reasonable articulable suspicion that she put drugs into her mouth. Finally, the court found that Hatfield did not voluntarily consent to a search of her mouth.
The state appeals the trial court's judgment, pursuant to R.C. 2945.67 and Crim.R. 12(J), asserting the following assignments of error:
 I. THE TRIAL COURT ERRED WHEN FINDING THAT THERE WAS NOT ANY REASONABLE SUSPICION TO EFFECT AN INVESTIGATIVE STOP OF DEFENDANT.
 II. THE TRIAL COURT ERRED WHEN FINDING THAT THE OFFICER DID NOT HAVE REASONABLE SUSPICION TO REQUEST THAT THE APPELLEE OPEN HER MOUTH.
 III. THE TRIAL COURT ERRED WHEN SUPPRESSING EVIDENCE BASED ON A FINDING THAT DEFENDANT'S OPENING HER MOUTH WAS NOT A VOLUNTARY CONSENT TO SEARCH.
 II.
Appellate review of a decision on a motion to suppress presents mixed questions of law and fact. State v. McNamara
(Dec. 23, 1997), Athens App. No. 97 CA 16, unreported, citingUnited States v. Martinez (C.A. 11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v.Carter (1995), 72 Ohio St.3d 545, 552. A reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592. We then independently apply the factual findings to the law regarding suppression of evidence. State v.Anderson (1995), 100 Ohio App.3d 688, 691.
 III.
In its first assignment of error, the state argues that the officers provided specific, articulable facts to support their reasonable suspicion that Hatfield violated the law by possessing crack cocaine. Hatfield asserts that once the officers saw that Burgin was not in the Neon, the purpose of the initial stop ended and the officers, lacking any reasonable suspicion for detaining the occupants any further, violated Hatfield's Fourth Amendment rights.
The Fourth Amendment to the United States Constitution provides for "[t]he right of the people to be secure * * * against unreasonable searches and seizures * * *." TheFourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions." Mincey v. Arizona (1978),437 U.S. 385. If officers obtain evidence by actions which violate an accused's Fourth Amendment rights, exclusion of the evidence at trial is mandated. Mapp v. Ohio (1961), 367 U.S. 643.
Pursuant to Terry v. Ohio (1968), 392 U.S. 1, a police officer may briefly detain an individual to investigate suspicious behavior if the officer can point to specific, articulable facts which, taken together with rational inferences from those facts, reasonably warrant the detainment. "Reasonableness" is measured in objective terms by examining the totality of the circumstances. State v. Robinette (1996),519 U.S. 33. The totality of the circumstances are "* * * to be viewed from the eyes of the reasonable and prudent police officer on the scene who must react to the events as they unfold." State v. Andrews (1991), 57 Ohio St.3d 86, 87-88, citing United States v. Hall (C.A.D.C. 1976), 525 F.2d 857,859. Where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid[.]" Dayton v. Erickson (1996), 76 Ohio St.3d 3,11-12.
Here, the officers stopped the Neon pursuant to a turn signal violation and an outstanding search warrant for Burgin, an individual they believed was in the car. The officers testimony of the traffic violation and the outstanding search warrant provided a reasonable suspicion based upon specific, articulable facts that a violation of the law had or was occurring. Therefore, we find that the officers acted in a constitutionally permissible fashion by stopping the Neon.
The state contends that because the officers had a reasonable articulable suspicion to stop the Neon, they also had a reasonable articulable suspicion to stop Hatfield. Hatfield argues that to search the individuals in the car, the officers must have possessed reasonable articulable suspicions that each individual in the car was engaged in criminal activity. Further, Hatfield asserts that her furtive gesture toward her mouth cannot support such a finding.
The scope of a Terry stop is limited and must be reasonably related to the articulable suspicion that prompted the search.State v. Franklin (1993), 86 Ohio App.3d 101, 104, appeal dismissed 67 Ohio St.3d 1421. An investigative stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Florida v. Royer (1983) 460 U.S. 491. However, the Fourth Amendment does not require a police officer who lacks the precise level of information necessary for probable cause simply to shrug his shoulders and allow a crime to occur or a criminal to escape. Adams v. Williams (1972),407 U.S. 143, 145-146; State v. Hart (1988), 61 Ohio App.3d 37,40-41. Rather, if during the initial stop, the officer observes articulable facts that continue to lead to a reasonable suspicion of criminal activity, the officer may detain an individual and conduct a more thorough investigation. State v.Robinette (1997), 80 Ohio St.3d 234, 241; State v. Eggleston
(1996), 109 Ohio App.3d 217.
A court reviewing the officer's actions must give due weight to his experience and training and view evidence as those in law enforcement would understand it. Id. at 86. In addition, a court may consider: (1) the arresting officer's familiarity with how drug transactions occur, State v. Bobo (1988), 37 Ohio St.3d 177,179-180; (2) the reputation of the area for criminal activity, Id. at 179, citing United States v. Magda (C.A.2, 1976), 547 F.2d 756, 758, certiorari denied (1977),434 U.S. 878; (3) the time of day which the alleged activity took place,State v. Andrews, 57 Ohio St.3d at 88; and (4) furtive gestures made by the suspect. Bobo, supra, at 179.
Here, the officers stopped the car at night, in an area known for drug activity. Upon approaching the car, Capt. Keener noted that Burgin was not in the car. However, Capt. Keener recognized Hatfield, who immediately made a furtive gesture toward her mouth. Based upon his police training, Capt. Keener believed that Hatfield had placed drugs into her mouth. We find, based upon the totality of the circumstances, that Capt. Keener expressed articulable facts which continued to lead to a reasonable suspicion of criminal activity. Therefore, Keener was justified in detaining Hatfield to conduct a more thorough investigation.
Accordingly, we sustain the state's first assignment of error.
 III.
In its second assignment of error, the state argues that the trial court erred in finding that Capt. Keener did not have a reasonable suspicion to demand that Hatfield open her mouth. Hatfield contends that her furtive gesture toward her mouth did not provide: (1) a reasonable suspicion to frisk her for weapons; or (2) probable cause that she possessed drugs.
As stated supra, the scope of a Terry stop is limited and must be reasonably related to the articulable suspicion that prompted the search. State v. Franklin (1993), 86 Ohio App.3d 101,104, appeal dismissed 67 Ohio St.3d 1421. If an officer who has validly stopped an individual is justified in believing that the suspicious individual is armed and dangerous, the police officer may conduct a "pat-down" search for weapons.Terry, supra, at 24; State v. Franklin, 86 Ohio App.3d at 104. To justify the pat-down, the officer must be able to articulate particular facts from which he reasonably inferred that the suspect was armed and dangerous. Sibron v. New York (1968),392 U.S. 40; State v. Marini (1992), 78 Ohio App.3d 279, appeal dismissed by 64 Ohio St.3d 1413.
Here, Capt. Keener's command that Hatfield open her mouth constituted an intrusion which exceeded the limited frisk envisioned under Terry. See State v. Franklin,86 Ohio App.3d at 105. Capt. Keener provided no specific, articulable facts to justify a suspicion that Hatfield had a weapon. Nor did the other officers provide any testimony supporting a reasonable suspicion that Hatfield was armed or presented a threat to them. Instead, Capt. Keener testified that he suspected that Hatfield put drugs in her mouth. Thus, Captain Keener's actions went beyond those permitted by Terry.
Permissible bases for the search may exist beyondTerry. The state asserts that Capt. Keener's actions fall within an exception to the warrant requirement, for searches conducted in exigent circumstances. State v. Althiser (Dec. 30, 1997), Washington App. No. 97CA14, unreported. To justify a warrantless search to seize evidence under the rubric of exigency, the state must establish: (1) probable cause and (2) some real likelihood that the evidence is in danger of being moved or destroyed in the time that it would take to get a warrant. Id. The state bears the burden of showing that exigent circumstances existed. See Xenia v. Wallace (1988), 37 Ohio St.3d 216.
Probable cause exists when a reasonably prudent person would believe that a crime has been committed or that the place to be searched contains evidence of a crime. State v. George (1989),45 Ohio St.3d 325. Probable cause is determined by the totality of the circumstances. See Illinois v. Gates (1983),462 U.S. 213, 232-233.
The state cites State v. Victor (1991), 76 Ohio App.3d 372, in support of its argument that the officers had probable cause to search Hatfield. In Victor, the Eighth District found probable cause where officers patrolling an intersection known for its drug transactions observed Victor: (1) wave his hands, motion to occupants of vehicles, and lean into a car stopped in the intersection; (2) flee when approached by the officers; and (3) place something into his mouth.
Unlike the facts in Victor, the officers in this case did not see Hatfield or any other passenger interact with Burgin. Nor did the officers see Hatfield make any other soliciting gestures which would profile her as a drug courier. Furthermore, Capt. Keener's observations of Hatfield lasted only a few seconds, whereas the officers in Victor observed the defendant's behavior for several minutes. Based upon the totality of the circumstances, we cannot find that the officers had probable cause to search Hatfield for drugs. As we find as a matter of law that probable cause did not exist, we need not address the issue of exigent circumstances. Capt. Keener's search does not fall within the exigent circumstances exception to the warrant requirement.
Accordingly, we overrule the state's second assignment of error.
 IV.
In its final assignment of error, the state asserts that the trial court erred in finding that Hatfield did not voluntarily consent to Capt. Keener's search. Voluntary consent may validate an otherwise illegal detention and search. State v.Robinette, 80 Ohio St.3d at 241, citing Davis v. United States
(1946), 328 U.S. 582. The totality-of-the-circumstances test is controlling in an unlawful detention to determine whether the suspect's permission is voluntary. Id. at paragraph two of the syllabus. Once an individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly show that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave. Id. at paragraph three of the syllabus, following Florida v. Royer (1983), 460 U.S. 491;Schneckloth v. Bustamonte (1973), 412 U.S. 218. The state bears the burden of showing that the suspect's consent was an independent act of free will. Florida v. Royer (1983),460 U.S. 491.
Based upon the totality of the circumstances, we find that the state did not fulfill its burden of proving that Hatfield voluntarily consented to open her mouth. At the time of the stop, Hatfield was sitting in the backseat of the two-door Neon. Capt. Keener approached the car on the driver side while the other detectives stood on the passenger side. The officers shined flashlights in Hatfield's eyes and immediately ordered her to open her mouth. Based upon Hatfield's position in the car, the officer's positions around the car, and the immediacy and urgency of Capt. Keener's commands, we find that Hatfield's consent was not an independent act of free will.
Accordingly, we overrule the state's third assignment of error.
 V.
In conclusion, we find that the officers provided specific articulable facts which led to a reasonable suspicion to stop the car and further detain Hatfield. We further find that the officers did not provide specific, articulable facts which would warrant a Terry pat-down for weapons or probable cause to search Hatfield. Finally, we find that the state failed to fulfill its burden of showing that Hatfield voluntarily consented to the search.
Accordingly, we reverse in part and affirm in part the judgment of the trial court.
JUDGMENT REVERSED IN PART AND AFFIRMED IN PART.