OPINION *Page 2 
{¶ 1} Defendant-appellant Jarvis Moore appeals his conviction and sentence entered by the Stark County Court of Common Pleas, on one count of possession of cocaine, in violation of R.C. 2925.11(A), (C)(4)(c), after the trial court found him guilty following Appellant's entering a plea of no contest. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On September 18, 2006, the Stark County Grand Jury indicted Appellant on the aforementioned charge. Appellant appeared before the trial court and entered a plea of not guilty at his arraignment on October 13, 2006. Appellant subsequently filed a Motion to Suppress/Dismiss, asking the trial court to prohibit the State from presenting any and all evidence surrounding the stop of Appellant on July 25, 2006, as the officer did not have a reasonable suspicion of criminal activity to institute the stop. The trial court conducted a hearing on November 6, 2006.
 {¶ 3} Sgt. John Dittmore of the Canton Police Department testified he and his officers were surveilling an apartment building in the 2700 block of Roland Avenue, NE, in Canton, Ohio, on July 25, 2006. Sgt. Dittmore explained he is the supervisor of the Gang Unit, and he and his men were assisting the Vice Unit and the Stark County Metropolitan Narcotics Unit in the surveillance of an individual by the name of Dontez Lewis. The Stark County Metropolitan Narcotics Unit had received information Lewis was supplying crack cocaine to other individuals, and was selling the drug from that location. *Page 3 
 {¶ 4} The sergeant described the neighborhood in which the apartment building is located as residential and stated it was a low area for drug activity. On July 25, 2006, Sgt. Dittmore observed Appellant driving a maroon Buick Roadmaster. Appellant parked the vehicle under a carport at the apartment building. At about the same time, Dontez Lewis and a female arrived. Lewis exited his vehicle and walked toward the door of the apartment building. Appellant exited his vehicle and approached Lewis. The two men spoke briefly, then entered the building together.
 {¶ 5} Approximately one hour earlier, Sgt. Dittmore observed an individual by the name of Benjamin Tyson arrive at the residence. Sgt. Dittmore had had past dealings with Tyson. Tyson entered the building and exited a short time later. Sgt. Dittmore provided the information to the K-9 officer on duty, Off. Swank, who was situated nearby in a marked vehicle. Off. Swank observed Tyson commit a traffic violation, and initiated a stop, during which Tyson was found to be in possession of crack cocaine.
 {¶ 6} Det. Dittmore watched Appellant enter and leave the apartment building in the same manner as Tyson had. Upon exiting the apartment building, Appellant possessed a small brown bag. Dittmore noted, based upon his training and experience, and based upon the observation made in the earlier stop of Tyson in which crack cocaine was found, he believed the bag Appellant was carrying contained narcotics. Dittmore explained when multiple people individually visit a residence and each stays only for a short period of time, such is indicative of drug activity taking place at that residence. The department had received complaints of drug activity occurring at the apartment complex at which Dittmore observed Appellant. *Page 4 
 {¶ 7} Sgt. Dittmore relayed the information regarding Appellant to Off. Swank, and instructed the officer to maintain surveillance of Appellant and make a stop of his vehicle. Off. Steven Swank, the K-9 officer assigned to the Canton Police Department's Gang Task Force, testified he was involved in the stop of Appellant's vehicle on July 25, 2006. Off. Swank stated he stopped the vehicle because he was directed by Sgt. Dittmore to do so based upon previously obtained information. The officer recalled the sergeant wanted him to initiate the stop because he (Sgt. Dittmore) believed Appellant had made a pickup of illegal narcotics at the apartment building his officers had been surveilling. Once Appellant stopped his vehicle, Off. Swank approached the driver's side and made contact with him. Off. Swank requested Appellant's driver's license, but Appellant informed the officer he did not have a license at that time. Officer Swank instructed Appellant to exit the vehicle and secured him in handcuffs.
 {¶ 8} The officer also searched Appellant's passenger, Willie Parish, after Parish gave him consent to do so. During the search, Off. Swank located a large marble size bulge between the cheeks of Parish's buttocks. Off. Swank inquired whether the bulge was crack cocaine, and Parish confirmed that it was. Parish also told Off. Swank Appellant had thrown the crack cocaine into his lap and told him to hide it. During the search of the vehicle, Off. Swank recovered a brown paper bag containing a half-empty forty ounce container of beer.
 {¶ 9} Det. Kevin Sedares of the Canton Police Department's Vice Bureau testified he was involved in the stop of the vehicle driven by Appellant on July 25, 2006. The detective was involved in the surveillance operation and was in the area in an unmarked car when Sgt. Dittmore radioed Appellant was leaving the apartment building. *Page 5 
Det. Sedares began to follow Appellant's vehicle in the area of 24th or 25th Street and Roland Avenue, then south to 19th Street. Off. Swank appeared and initiated the traffic stop at 19th and Market Street. Det. Sedares recalled the vehicle did not stop immediately after Off. Swank activated his cruiser's overhead lights. The detective observed a lot of movement in the vehicle and sent an advisement over the radio Appellant and his passenger might be ready to run. When asked the reason for the stop of Appellant's vehicle, Det. Sedares answered, "Suspicious of drug activity." Tr. Suppresion Hrg. at 28. The detective commented his level of suspicion weapons were in the vehicle was raised because of the excessive movement of the occupants in the vehicle prior to the stop. While Off. Swank approached the driver's side of the vehicle, Det. Sedares maintained a position of cover at the right rear passenger side. The detective made contact with the passenger, Willie Parish, after Off. Swank began to speak with Appellant. Det. Sedares instructed the passenger to step out of the vehicle, asked his identity, and patted him down for weapons. Det. Sedares did not find any weapons on Parish.
 {¶ 10} Following the testimony of the officers, counsel for the parties presented closing arguments to the trial court. The trial court found the officers had a reasonable articuable suspicion of criminal activity to stop Appellant's vehicle. The trial court further found the officers did not violate Appellant's constitutional rights. Based upon the findings, the trial court overruled Appellant's Motion to Suppress/Dismiss. The trial court memorialized its decision via Judgment Entry filed November 7, 2006. On November 13, 2006, Appellant appeared before the trial court and entered a plea of no contest to *Page 6 
one count of possession of cocaine. The trial court found Appellant guilty and sentenced him to a period of incarceration of one year.
 {¶ 11} It is from this conviction and sentence Appellant appeals, raising the following assignments of error:
 {¶ 12} "I. THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLEANT'S MOTION TO SUPPRESS."
 I {¶ 13} In his sole assignment of error, Appellant contends the trial court erred in failing to grant his motion to suppress. We agree.
 {¶ 14} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E .2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial *Page 7 
court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93,641 N.E.2d 1172; State v. Claytor (1993), 85 Ohio App .3d 623,620 N.E.2d 906; Guysinger, supra. As the United States Supreme Court held inOrnelas v. U.S., (1996), 517 U.S. 690, 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 15} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. Guysinger, supra, at 594 (Citations omitted). Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. (Citation omitted).
 {¶ 16} In Terry v. Ohio (1968), 392 U.S. 1, 22, the United States Supreme Court determined "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articuable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus.
 {¶ 17} The purpose of the stop and momentary detention recognized inTerry is to confirm or dispel any suspicion that the circumstances and the suspect's behavior *Page 8 
may have aroused. While the initial stop may be supportable, it does not justify detention or further inquiry when the suspicion to support the stop is immediately dissipated by facts readily apparent to the officer.Wadsworth v. Tomer (1994) 73 Oh. Misc.2d 27. Any additional intrusion or detention must be supported by specific articuable facts demonstrating the reasonableness of the continued detention. State v. Chatton (1984)11 Ohio St.3d 59, 463 N.E.2d 1237, State v. Hart (1988)61 Ohio App.3d 37, 572 N.E.2d 141. Id. Terry requires the least minimal intrusion possible to investigate the suspicious circumstances. The stop does not automatically justify a pat down search or frisk. Such a search must be independently supported and is limited to a search for weapons based upon the Officer's obligation to articulate reasonable, particular facts that her safety was endangered. Sibron v. New York (1968) 392 U.S. 40,State v. Sutherland (1994) Ohio App.3d 840, State v. Hines (1993)92 Ohio App.3d 163, 634 N.E.2d 654.
 {¶ 18} However, an officer is authorized to conduct an investigatory stop of an individual if the officer has a reasonable articuable suspicion that criminal activity is afoot. Ohio Courts have followed Supreme Court case law and developed a two-step analysis to assess the reasonableness of a stop and frisk seizure. First, the propriety of the investigative stop is determined; and second, the basis for and scope of the protective frisk/search is analyzed. State v. Andrews (1991)57 Ohio St.3d 86, 87, 565 N.E.2d 1271; Terry, supra at 19-20. In short, the totality of the surrounding circumstances must provide a reasonable and prudent officer with an objective and particularized suspicion that criminal activity is afoot in order to justify a seizure and pat *Page 9 
down of a suspect who is believed to be armed and dangerous.Andrews, supra at 87-8, 565 N.E.2d 1271; State v. Bobo (1988),37 Ohio St.3d 177, 180, 524 N.E.2d 489.
 {¶ 19} The Fourth District Court of Appeals in State v. Horsely
(January 25, 1999), Ross Co. App. No. 98CA2423, noted: "however, that law enforcement officers are not required to rule out all possibilities of innocent behavior before initiating an investigative stop. UnitedStates v. Holland (C.A.9, 1975), 510 F.2d 453. Conduct consistent with innocent behavior may give rise to a reasonable suspicion of criminal activity. United States v. Soklow (1989), 490 U.S. 1, 109 S.Ct. 1581,104 L.Ed.2d 1; United States v. Gomez (C.A.5, 1985), 776 F.2d 542. Additionally, we note the requisite level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence.Soklow, supra. The question is whether an officer `could reasonably surmise that the [person] they stopped was engaged in criminal activity'. United States v. Cortez (1981), 449 U.S. 411, 101 S.Ct. 690,66 L.Ed.2d 621. Surmise means to `form a notion on slight proof."
 {¶ 20} In the instant action, Sgt. Dittmore and his officers were conducting a surveillance of a suspected drug dealer. The position of the officers provided them with a view of the front entrance of the apartment building out of which the police believed the dealer operated. Sgt. Dittmore stated the building housed ten or twelve apartments. On the day in question, Dittmore observed Appellant arrive at the building and park his vehicle underneath a carport. When Dontez Lewis, the suspected drug dealer, arrived, Appellant exited the vehicle and approached Lewis. Appellant and Lewis spoke briefly and entered the building together. Appellant remained in the building for a short period of time, then emerged carrying a small paper bag. He returned to his vehicle and drove *Page 10 
away. Sgt. Dittmore relayed information to Off. Swank, who was working in a marked cruiser, and to other officers, who were in unmarked vehicles, and instructed them to maintain surveillance on Appellant. Sgt. Dittmore instructed Off. Swank stop Appellant's vehicle.
 {¶ 21} We find the officers did not have a reasonable articuable suspicion of criminal activity to support the stop of Appellant. Appellant did not commit a separate traffic violation which would have justified the stop. Sgt. Dittmore testified the building in which Dontez Lewis lives is located in a low drug area. The officers were not surveilling the interior of the building, and did not observe whether Appellant entered an apartment with Lewis or another apartment. An hour before Appellant's arrival, the officers arrested another individual (Tyson) who had, like Appellant, entered Lewis' apartment building for a short period of time. While there is evidence Tyson was found in possession of crack cocaine, we find no evidence Tyson received the drugs from Lewis, other than Sgt. Dittmore's suspicion. Although the facts known to Dittmore indicated a drug transaction had possibly occurred, we find such does not rise to the level of reasonable suspicion Appellant actually participated in criminal activity. An officer may not predicate a stop upon intuition or a hunch. Columbus v.Holland (1991), 76 Ohio App.3d 196. The mere act of speaking with a known drug dealer or being inside a multi-resident apartment building in which a known drug dealer resides cannot support the stop of an individual.
 {¶ 22} Based upon the foregoing, the trial court should have granted Appellant's Motion to Suppress/Dismiss.
 {¶ 23} Appellant's sole assignment of error is sustained. *Page 11 
 {¶ 24} The judgment of the Stark County Court of Common Pleas is reversed and the matter remanded for further proceedings consistent with this opinion and the law.
 Hoffman, P.J. Farmer, J. and Edwards, J. concur. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is reversed and the matter remanded for further proceedings consistent with this opinion and the law. Costs assessed to Appellee. *Page 1