**The STATE of Ohio, Appellant,**

**v.**

**SMITH, Appellee.**

[Cite as *State v. Smith* (1991), 73 Ohio App.3d 471.]

Court of Appeals of Ohio,
Wood County.

No. 90WD077.

Decided May 3, 1991.

472

*Alan R. Mayberry*, Prosecuting Attorney, for appellant.
*Adrian P. Cimerman*, for appellee.

---

*Per Curiam.*

Appellant, the state of Ohio, is appealing an order of the Wood County Court of Common Pleas granting defendant-appellee's motion to suppress evidence. The court found that a warrantless search of appellee's motel room which produced an allegedly forged Ohio operator's license was not incident to his arrest and was in violation of his Fourth Amendment right to be free from unreasonable searches. We find that the trial court correctly applied the law to the facts and, therefore, affirm its decision.

On the morning of May 16, 1990, Northwood, Ohio police were called to the Bahala Inn on complaint of a Bridget Smith. Smith told police that she had been staying in room 158 of the Bahala with a man named Jack Dickerson. According to Smith, earlier that morning Dickerson had held a gun to her

head, threatened to kill her, and pistol-whipped her. Officers observed bruises on Smith's body.

Officers went to the motel and knocked on the door of room 158. The door was open. Officers entered. Once inside, police observed two females and appellee who was lying on the bed. An officer asked appellee if his name was Dickerson. Appellee indicated that it was. During this exchange a second officer picked up a wallet from a dresser and inquired of appellee if it was his. Appellee said it was. The officer opened the wallet and removed an Ohio operator's license bearing appellee's picture and the name Jack Dickerson II.

Appellee was arrested for felonious assault. Subsequent to appellee's arrest, Bridget Smith executed a consent form granting police permission to search room 158. At some point, the record is unclear as to when, Smith told police that appellee was not Jack Dickerson, but was in fact Charles Smith. Police investigated and later added two counts of forgery to the felonious assault charge. One forgery count was based on the Dickerson operator's license found in room 158. The second count was based on appellee signing the name of Jack Dickerson to his fingerprint card during booking.

Bridget Smith did not appear at appellee's preliminary hearing, and the state was unable to produce any witnesses in support of the felonious assault charge. That count was dismissed. Appellee was bound over to the grand jury and later indicted on the two counts of forgery. Appellee pled not guilty and moved to suppress both the allegedly forged operator's license and the fingerprint card signed after his arrest. Appellee asserted both had been obtained in a manner violating his Fourth Amendment right to be free from unreasonable searches.

Following a hearing, the trial court found that the search of appellee's wallet had been violative of the Fourth Amendment and ordered the seized operator's license suppressed. From this order the state filed a Crim.R. 12(J) affidavit and a notice of appeal.

■ Appellee in his brief argues a cross-assignment of error; however, he failed to file a notice of appeal pursuant to App.R. 4(B). This court, therefore, is without jurisdiction to entertain appellee's cross-assignment of error. *Kaplysh v. Takieddine* (1988), 35 Ohio St.3d 170, 175, 519 N.E.2d 382, 386–387. Remaining then is appellant's single assignment of error:

"The trial court erred in granting the defendant's motion to suppress as the defendant was lawfully taken into custody at the time of his arrest and the operator's license was found incident to that arrest."

■ Under the Fourth Amendment to the Constitution of the United States and Section 14, Article I of the Constitution of Ohio, warrantless

searches are unreasonable *per se*.   *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, 7 O.O.3d 375, 376, 373 N.E.2d 1252, 1255.   To this basic rule there are but a few specifically established exceptions.   The state bears the burden of proving that one of these exceptions applies in order for evidence seized as a result of a warrantless search to survive a motion to suppress.   *Id.*

Appellant puts forth two exceptions which it asserts apply to the case at bar.   First, appellant argues that the search in question was incident to a lawful arrest and, therefore, exempt from the requirement of a warrant. *Chimel v. California* (1969), 395 U.S. 752, 762–763, 89 S.Ct. 2034, 2039–2040, 23 L.Ed.2d 685, 693–694;   *United States v. Robinson* (1973), 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427, 440.   In the alternative, should we fail to find the search in question an incident of arrest, appellant would have us apply the doctrine of inevitable discovery as articulated in *Nix v. Williams* (1984), 467 U.S. 431, 443–444, 104 S.Ct. 2501, 2508–2509, 81 L.Ed.2d 377, 387– 388.

In order for appellant to prevail on its first theory there must be both a lawful arrest and the search must be incident to that arrest.   Preliminarily, it must be established that the officers were legally present in the motel room.   Absent consent or exigent circumstances, police may not enter one's home to perform a search or to seize either a person or property without a warrant.   *Payton v. New York* (1980), 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639, 653.   The sanctity of the home extends to any area where one has a legitimate and reasonable expectation of privacy.   *Rakas v. Illinois* (1978), 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387, 400.   See, also, *Katz v. United States* (1967), 389 U.S. 347, 351–352, 88 S.Ct. 507, 511– 512, 19 L.Ed.2d 576, 581–582.   The parties here agree that an occupied motel room is afforded such protection.   See, also, *Stoner v. California* (1964), 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856, 861.

The authority to consent to the entrance of a protected area, however, does not rest solely with one who seeks to assert Fourth Amendment rights. Consent may also be provided by a third party who possesses common authority over the premises in question.   *United States v. Matlock* (1974), 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 249.   Such authority rests not on property rights;   " * * * but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit * * * [entry]."   *Id.* at fn. 7.

In the case before us, Bridget Smith summoned police to the Bahala Inn and reported the alleged felonious assault which supposedly occurred in

the room in which she had been staying. Smith, therefore, held herself out to be a coinhabitant of appellee's room. The record shows, notwithstanding appellee's assertion that Smith's name was not on the motel register, that Smith was a coinhabitant of the room. That fact is uncontroverted. Being a coinhabitant she meets the *Matlock* test and had common authority to grant the police permission to enter the premises. Clearly, Smith summoned police to the motel, pointed out the room to officers, and knew the officers intended to enter the room. Viewing the totality of the circumstances, we find that the trial court possessed substantial evidence to determine that Smith consented to the officers' entry into room 158.

■ The record, however, suggests that Smith did not consent to a search of room 158 prior to the discovery of the suppressed operator's license. No officer testified that a consent to search was discussed with Smith prior to the police entry of room 158. The consent to search that Smith did sign clearly was signed after the appellee was in custody and after the contested search occurred. We decline, as did the trial court, to imply from Smith's conduct that she consented to a search prior to the discovery of the operator's license. Accordingly, we hold that appellee's arrest was lawful pursuant to R.C. 2903.11 and 2935.03(B). We also hold that there was no consent for the search that produced the suppressed evidence.

■ We must next determine whether the search that uncovered the suppressed evidence was incident to appellee's arrest. Appellant argues that because it was the intention of the officers to arrest appellee from the moment they entered the room, anything that occurred subsequent to their entry was incident to the arrest. To endorse such a broad exception predicated on an officer's intention stated after the fact would be ill-advised. Such an exception could lead to a dangerous infringement of Fourth Amendment guarantees. We, therefore, reject this argument.

Appellee submits that *Smith v. Ohio* (1990), 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464, established a virtual *per se* rule that any warrantless search which is antecedent to the actual taking into custody of a suspect is violative of the Fourth Amendment. We do not believe the holding of *Smith* sets such an extensive standard.

The issue in *Smith* was " * * * whether a warrantless search that provides probable cause for an arrest can nonetheless be justified as an incident of that arrest." *Id.* at 541, 110 S.Ct. at 1289, 108 L.Ed.2d at 466. The United States Supreme Court found such circular reasoning unacceptable. In the case at bar, police had probable cause to believe that appellee had committed a felonious assault. This was the justification for appellee's arrest. The arrest

before us, unlike the arrest in *Smith,* was not based on evidence seized as the result of a warrantless search.

One may be able to envision factual circumstances whereby the officers' personal safety may require a preemptive search for weapons within the arrestee's immediate control directly antecedent to the technical execution of an arrest. Similarly, one might envision factual circumstances whereby the need to preserve highly destructible evidence might necessitate such a search—all under the well-established guidelines set forth in *Chimel, supra.* However, in the case at bar, it is difficult to conceive of any weapon that could be concealed within the appellee's wallet, nor is it likely that any evidence of felonious assault would be present there. The scene of appellee lying on a hotel bed, not under arrest, his wallet lying on a dresser, and the police searching the same leads us to hold that this warrantless search was not incident to arrest.

■ Finally, appellant argues that if the evidence suppressed is found not to be within the incident-to-arrest exception to the Fourth Amendment, then this evidence should nonetheless be allowed under the doctrine of inevitable discovery. The doctrine of inevitable discovery is a corollary of the independent source exception to the exclusionary rule, which holds that evidence will not be suppressed if the state learns of the questioned evidence from a source separate and distinct from an illegal source. *Wong Sun v. United States* (1963), 371 U.S. 471, 487–488, 83 S.Ct. 407, 417–418, 9 L.Ed.2d 441, 455–456. The inevitable discovery rule states that "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by a lawful means * * * the evidence should be received." *Nix v. Williams, supra,* 467 U.S. at 444, 104 S.Ct. at 2509, 81 L.Ed.2d at 387–388. See, also, *State v. Perkins* (1985), 18 Ohio St.3d 193, 18 OBR 259, 480 N.E.2d 763, syllabus.

Appellant argues that the police would have inevitably discovered the allegedly forged operator's license either through the consent search which followed appellee's arrest or through an inventory search of appellee's effects during booking.

■ The scope of a consent search is limited by the terms of its authorization. *Walter v. United States* (1980), 447 U.S. 649, 656–657, 100 S.Ct. 2395, 2401–2402, 65 L.Ed.2d 410, 417–418. The consent search conducted by police in room 158 was authorized by a third party, Bridget Smith. As a coinhabitant of room 158, Smith had authority to authorize its search. It is not clear, however, that Smith had the authority, real or apparent, to consent to a search inside the wallet or purse of any of the other occupants of room 158.

As regards the probability of the operator's license being acquired by police during an inventory search of appellee's personal effects, this also appears by no means certain. At the suppression hearing, one of the arresting officers testified that it was his personal practice to secure the personal property of a suspect following arrest. This bare assertion leads to speculation as to the exact scope of the officer's securement. Does he secure all of the suspect's personal property, only what a suspect has on his person, all within a set radius of the suspect? Such speculation is not sufficient to meet the state's burden to prove inevitable discovery.

It does not appear from the record that Bridget Smith had authority to consent for police to search inside appellee's wallet, neither does it appear that there was a reasonable certainty that the operator's license would have made its way into the property of appellee that the police inventoried. For these reasons, we hold that appellant has failed to meet its burden to prove by a preponderance of the evidence that appellee's allegedly forged operator's license would have inevitably been discovered by lawful means.

For the reasons stated above, we find the evidence ordered suppressed by the trial court was acquired as the result of a warrantless search that was not incident to appellee's arrest. We also find that appellant has not met its burden to show by a preponderance of the evidence that the suppressed evidence would have ultimately or inevitably been acquired through lawful means. The suppressed evidence was, therefore, acquired in violation of the guaranty of freedom from unreasonable searches found in the Fourth Amendment to the Constitution of the United States and Section 14, Article I of the Constitution of Ohio. The appellant's assignment of error is, therefore, not well taken.

On consideration whereof, the court finds the evidence in question was properly suppressed, and the order of suppression by the Wood County Court of Common Pleas is affirmed. This cause is remanded to said court for further proceedings not inconsistent with this decision.

*Judgment accordingly.*

ABOOD, MELVIN L. RESNICK and SHERCK, JJ., concur.