OPINION
Patrick Joseph Norris, Sr. was indicted for possession of non-crack cocaine. After his motion to suppress evidence was overruled, Norris pleaded no contest to the charge and was found guilty. The trial court imposed community control sanctions, a fine, and a license suspension. On appeal, Norris assigns as error the overruling of his motion to suppress.
The trial court's decision and order overruling the motion to suppress contains a comprehensive narration of the facts, which is amply supported by the record, and a lucid legal analysis which we set out in its entirety:
 On July 9, 1998, Dayton Police Officers Pittman and Brandenburg were assigned to the second district. At a few minutes past 11:00 p.m., the officers were dispatched to 155 Indiana Avenue, the residence of Ms. Paula Norris, on a 911 domestic violence call. According to Officer Pittman's testimony, after the officers arrived, they talked with Ms. Norris and she told them that earlier that day she had filed domestic violence charges against the Defendant's son who lived there. Ms. Norris also told the officers that her husband, the Defendant, had come to her house later that day demanding credit cards so that he could bail his son out of jail. After demanding the credit cards, Ms. Norris also told the officers that the Defendant grabbed her, pushed her down on the ground in her front yard and said he wanted the credit cards or he would bust the windows out of her car. Ms. Norris signed a domestic violence witness statement against the Defendant and told the officers that the Defendant had left in his van and might be staying at the Econo Lodge.
 While Officer Pittman had Ms. Norris sign the statement, Officer Watson who had also been dispatched to 155 Indiana Avenue on the domestic violence call proceeded to travel to the Econo Lodge on Edwin C. Moses Boulevard to see if he could locate the Defendant's van. Officer Watson located a van and then confirmed it was the Defendant's by checking the license plate. He also attempted, unsuccessfully, to obtain a back-up crew from the third district. By radio, Officer Watson then told Officer Pittman he had located the van in the Econo Lodge parking lot. Officers Pittman and Brandenburg subsequently met Officer Watson at the Econo Lodge at around 11:30 p.m. and the three officers went inside the front office where they met with security guards. The security guards told the officers that the Defendant was staying in Room 160. After the officers and the security guards walked to Room 160, Officer Watson knocked on the door and a man meeting the officers' physical description of the suspect opened the door inwardly and stood inside the hotel room. The officers asked the man who he was and he identified himself as Patrick Norris, the Defendant. There was only one door to the first-floor hotel room and a window. A woman was also present inside. The Defendant did not invite the officers to enter the hotel room.
 Officer Watson then told the Defendant he was under arrest for domestic violence and asked him to put his hands behind his back. When the officers attempted to handcuff the Defendant and he refused to remove his hand from one of his pockets, Officer Watson entered the hotel room, attempting to handcuff Defendant's right hand. The other officers also entered the room and a struggle ensued between the Defendant and the officers. According to Officer Pittman, they pushed the Defendant onto the bed in his hotel room, about five feet away from the door, to get him handcuffed because they were not sure what he had in his pocket. After the officers had the Defendant handcuffed, they took him out to Officer Pittman's cruiser and Officer Watson patted him down. During the pat-down search, the Defendant still kept his hand in his pocket. A white bag of powder then fell out of the Defendant's hand which was in his pocket and onto the ground. Defendant's arrest took place at about 12:05 a.m. on July 10, 1998. Officer Watson testified that Dayton police officers usually arrest a person charged with domestic violence, absent a warrant, when a complainant has signed a domestic violence witness statement requesting that a person be detained by law enforcement authorities.
 The Defendant now moves the Court for an order suppressing evidence obtained as a result from the warrantless entry into the Defendant's hotel room. Defendant claims that the entry into the hotel room was unconstitutional because the officers had no warrant for his arrest, there were no exigent circumstances and Defendant had not given consent to the entry. Defendant contends that the Fourth Amendment prohibits warrantless arrests within the confines of a house or place where a person has a legitimate expectation of privacy, such as his hotel room. Defendant attempts to distinguish cases in which the arrest of suspects upon probable cause was upheld where the person was standing within the threshold or frame of an open door, claiming that the Defendant was well within the confines of the hotel room at the time of his arrest.
 Absent consent or exigent circumstances, police may not enter one's home to perform a search or to seize a person or property without a warrant. Payton v. New York (1980), 445 U.S. 573. The sanctity of the home extends to any area where one has a legitimate and reasonable expectation of privacy. See State v. Smith (1991) 73 Ohio App.3d 471; Rakas v. Illinois
(1978), 439 U.S. 128; Katz v. United States (1967), 389 U.S. 347. However, if probable cause exists, no warrant is required to apprehend a suspected felon or suspect who has committed a misdemeanor in the officer's presence in a public place. United States v. Watson (1976), 423 U.S. 411.
 In the present case, the Court finds that the officers had probable cause to arrest the Defendant. The Supreme Court has stated that "probable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates (1983), 462 U.S. 213, 232. "Probable cause to arrest depends `upon whether, at the moment the arrest was made . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' Beck v. Ohio (1964) 379 U.S. 89, 91. The Court finds that based on the written and oral statements of Ms. Norris, the officers had reasonably trustworthy information that the Defendant had committed an offense of domestic violence. Furthermore, R.C. 2935.03(B) allows an officer to make a warrantless arrest for a misdemeanor not committed in the officer's presence when the officer has been provided with a written statement that the offender has committed the offense of domestic violence, menacing by stalking or aggravated trespass. The written statement constitutes reasonable ground to believe that the offense was committed and reasonable ground to believe that the person alleged to have committed the offense is guilty of the violation. Therefore, the Court finds that the officers had probable cause to arrest the Defendant in this case.
 The Defendant, however, argues that the warrantless arrest was nevertheless unconstitutional because it was not made in a public place or under exigent circumstances, such as "hot pursuit." The Court does not agree. In United States v. Santana (1976), 427 U.S. 38, the United States Supreme Court upheld a warrantless arrest where the police first approached the defendant while she was standing in the open doorway of her home holding a paper bag of marked money that had been used to buy heroin. Id. When she retreated into the confines of her home, the police followed and arrested her. Id. The Court held that the defendant, while standing in the doorway of her home, was in a public place for purposes of the Fourth Amendment since she was not in an area where she had any expectation of privacy but was exposed to public view, speech, hearing and touch as if she had been completely outside her home. Id. at 42.
 In the present case, the Court finds that the Defendant, by opening the door to the police, knowingly exposed himself and his hotel room to public view. As in Santana, the Defendant should be considered to have been in a "public place" and his attempted retreat into the confines of a home or hotel room should not be allowed to frustrate the officers' attempt to make a lawful arrest based upon probable cause.
The sole question before us is whether the police were entitled to arrest Norris inside his motel room without a warrant. The State contends that by voluntarily opening the motel room door in response to the police knock on the door, he willingly exposed himself to public view and abandoned any reasonable or legitimate expectation of privacy he might have had in the motel room. As a backup argument, the State contends that, assuming Norris retained a reasonable expectation of privacy in the motel room, the arrest was nevertheless lawful because "hot pursuit" provided the police with an exception to the warrant requirement.
The parties appear to agree on a number of threshold issues which serve to narrow our inquiry: the police had probable cause to arrest Norris; there is statutory authorization to effect an arrest for domestic violence without a warrant; Norris was inside
the motel room from the time he opened the door until he was arrested; a motel room is accorded the same sanctity as a home. Whether the police could lawfully arrest Norris without a warrant, absent exigent circumstances, requires us to thus determine whether this case is controlled by United States v. Watson (1976),423 U.S. 411 — upholding warrantless arrests based on probable cause in public places — or Payton v. New York (1980),445 U.S. 573 — forbidding such arrests within a home.
In support of its first contention, i.e., that Norris abandoned any reasonable expectation of privacy by opening the motel room door, the State cites State v. Hall (June 30, 1986), Lucas App. No. L-85-403, unreported. In that case, a majority of a divided Sixth District Court of Appeals held that by voluntarily opening a motel room door in response to a knock by the police, Hall "displayed no expectation of privacy that would be protected by the Fourth Amendment." Hall, however, did not implicate Payton — indeed, the court didn't even mention Payton — because the police entered the motel room with prior knowledge that there was an outstanding warrant for Hall's arrest. Such is not the case here, where the Dayton police arrested Norris without a warrant.
Closer to the mark from the State's perspective is UnitedStates v. Cruz Jiminez (1st Cir. 1990) 894 F.2d 1, involving a warrantless arrest of the defendant at a motel room. The precise facts are critical:
 The government claims that when its agents arrived at the motel, the defendant's room door was open, and one of its agents observed Cruz standing in the doorway. The agent identified Cruz, and placed him under arrest. The defendant then stepped inside the room, where the agent frisked him and read him his Miranda rights. P. 3.
The court of appeals held on these facts that the defendant had no legitimate expectation of privacy and upheld the warrantless arrest, which was based on probable cause. Citing Payton, the court recognized that:
 It is well established that, absent consent or exigent circumstances, private homes may not be constitutionally entered to conduct a search or to effectuate an arrest without a warrant, even where probable cause exists. P. 5.
The court also observed that "(o)rdinarily, this constitutional panoply also extends to guest rooms in commercial establishments." The court concluded, in effect, that by standing in the doorway, the defendant lacked any "legitimate expectation of privacy which the fourth amendment will operate to protect."
What distinguishes this case from Cruz Jiminez is that Norris was at all times inside his motel room. We believe this distinction is critical. Payton states in no uncertain terms:
 In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant. P. 590.
Given the fact that Norris was at all times inside his motel room, if only by a few feet, Payton clearly commands that, absent exigent circumstances, his arrest could only be by warrant, notwithstanding that a state statute authorized a warrantless arrest (which was the same situation involved in Payton).
The question thus becomes whether the arresting officers were in hot pursuit of Norris when they arrested him. We have not been furnished with, nor have we located, a comprehensive definition of "hot pursuit." One example of hot pursuit is contained in Wardenv. Hayden (1967), 387 U.S. 294, 298-99:
 The police were informed that an armed robbery had taken place, and that the suspect had entered 2111 Cocoa Lane less than five minutes before they reached it. They acted reasonably when they entered the house and began to search for a man of the description they had been given and for weapons which he had used in the robbery or might use against them. The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape.
Another example can be found in United States v. Santana
(1976), 427 U.S. 38, 40-41; 42-3:
 (Sergeant) Pruitt and the others then drove approximately two blocks back to 2311 North Fifth Street. They saw Santana standing in the doorway of the house with a brown paper bag in her hand. They pulled up to within 15 feet of Santana and got out of their van, shouting "police," and displaying their identification. As the officers approached, Santana retreated into the vestibule of her house.
 The officers followed through the open door, catching her in the vestibule. As she tried to pull away, the bag tilted and "two bundles of glazed paper packets with a white powder" fell to the floor. Respondent Alejandro tried to make off with the dropped envelopes but was forcibly restrained. When Santana was told to empty her pockets she produced $135, $70 of which could be identified as Gilletti's marked money. The white powder in the bag was later determined to be heroin.
* * *
 The only remaining question is whether her act of retreating into her house could thwart an otherwise proper arrest. We hold that it could not. In Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782
(1967), we recognized the right of police, who had probable cause to believe that an armed robber had entered a house a few minutes before, to make a warrantless entry to arrest the robber and to search for weapons. This case, involving a true "hot pursuit," is clearly governed by Warden; the need to act quickly here is even greater than in that case while the intrusion is much less. The District court was correct in concluding that "hot pursuit" means some sort of a chase, but it need not be an extended hue and cry "in and about [the] public streets." The fact that the pursuit here ended almost as soon as it began did not render it any the less a "hot pursuit" sufficient to justify the warrantless entry into Santana's house. Once Santana saw the police, there was likewise a realistic expectation that any delay would result in destruction of evidence.
In short, "hot pursuit" is an exigent circumstance that relieves the police of the warrant requirement where the delay attendant upon obtaining the warrant would result, inter alia, in the escape of a suspect or the destruction of evidence.
Furthermore, "hot pursuit" has been described as "immediate and continuous pursuit . . . from the moment probable cause arose to arrest." State v. Rouse (1988), 53 Ohio App.3d 48, 51.
In State v. Hablutzel (Nov. 23, 1988), Hamilton App. No. C-870789, 790, 791, unreported, the court of appeals held that the State cannot claim "hot pursuit" where a police officer delays making an arrest for the purpose of obtaining back-up assistance from other officers. That is the situation in this case, where Officer Watson, having located Norris's van at the Econo Lodge parking lot, first sought — unsuccessfully — back-up assistance from the Third District, and then radioed Officers Pittman and Brandenburg — who were still on Indiana Avenue in the Second District — to come and assist, and awaited their arrival before taking further steps to arrest Norris.
Furthermore, Norris was situated in a first floor motel room with one door and one window. If the police thought a delay in obtaining an arrest warrant was intolerable, they could have kept the room under surveillance until Norris emerged, at which time they could have made a warrantless arrest. Watson, supra. (It is more likely that the police simply thought they needed no warrant to arrest Norris).
It is not suggested that destruction of evidence was a concern.
The trial court did not address "hot pursuit" because it found Norris had no legitimate expectation of privacy in the hotel room. We have addressed "hot pursuit" because we have determined the trial court's rationale for overruling the motion to suppress was incorrect. We also determine that the facts do not support a "hot pursuit" exception to the warrant requirement.
The assignment of error is sustained. The judgment will be reversed, and the case will be remanded for further proceedings consistent with this opinion.
FAIN, J. and YOUNG, J., concur.
Copies mailed to:
R. Lynn Nothstine, Christopher W. Thompson, Hon. Adele M. Riley.