DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Wood County Court of Common Pleas which granted appellees' motions to suppress evidence obtained following a search of the cab of appellee Morton Reeves' tractor-trailer rig. For the reasons that follow, this court affirms the judgment of the trial court.
Appellant state of Ohio sets forth the following assignment of error:
 "THE TRIAL COURT ERRED IN GRANTING THE MOTIONS TO SUPPRESS BECAUSE THE EVIDENCE WAS SEIZED DURING A LAWFUL SEARCH OF THE CAB OF A SEMI-TRUCK."
The facts that are relevant to the issues raised on appeal are as follows. On January 19, 1999, appellees were arrested and charged with pandering obscenity in violation of R.C.2907.32. On March 16, 1999, appellees entered pleas of not guilty. On April 30 and May 3, 1999, respectively, Marra and Reeves filed motions to suppress all evidence seized as a result of the warrantless search, which included numerous "adult" videotapes. On June 14, 1999, a hearing was held on the motions and the following evidence was presented.
Trooper Alejo Romero III, of the Ohio State Highway Patrol, testified that on January 19, 1999, he was on duty and monitoring his CB radio when he overheard a conversation in which a male stated that he had approximately one hundred fifty recent release videotapes and one hundred "pornos" for sale. Another trooper contacted the individual on the radio and arranged to meet the person selling the videos at a nearby truck stop. When the troopers arrived at the stop, Romero parked his car in front of the truck and then approached and asked the driver, appellee Morton Reeves, to step out. Romero then asked the passengers, an adult male and appellee Sharron Marra, to step out of the truck. When Romero looked into the cab, the only video in plain view was a blank video case with the title "Lethal Weapon 4" printed on a white adhesive label. The troopers then advised the individuals of their rights and took statements from them. At the same time, several other troopers undertook a warrantless search of the truck. Romero testified that the troopers found approximately ten boxes of videotapes in blank casings with the titles indicated on labels; a double-deck VCR; a television and a binder with a catalogue of what he described as "pornographic titles." The troopers photographed the videos, which were contained in large cardboard boxes in the sleeping compartment, and confiscated three hundred eleven tapes. Romero further testified that the troopers contacted the Wood County Prosecutor's Office and were advised to charge appellees with pandering obscenity in violation of R.C. 2907.32. One of the troopers contacted several federal agencies and was told they were not interested in pursuing prosecutions for copyright infringement. Romero testified that his belief that probable cause existed to stop and search the truck was based on information that appellees were selling general title movies for $10 each, or three for $25. The troopers subsequently viewed several of the videos and concluded that some of them "contained material that could be determined as obscene." Romero also testified that his experience with crimes involving obscenity was limited to this case and that he was not familiar with the legal definition in Ohio of "obscenity."
On July 16, 1999, the trial court granted appellees' motions to suppress. Appellant then timely filed a notice of appeal.
In its sole assignment of error, the state asserts that the trial court erroneously granted appellees' motions to suppress. The state argues that probable cause existed that appellees were pandering obscenity and that the mobility of appellees' truck created the exigent circumstances necessary to conduct a warrantless search and forego a prior judicial determination as to whether any of the tapes were obscene.
When reviewing a trial court's ruling on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. An appellate court must independently determine, without deferring to the trial court's conclusions, whether as a matter of law the facts meet the applicable standard. State v. Klein (1991),73 Ohio App.3d 486, 488.
The Fourth Amendment to the Constitution of the United States and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. Without a warrant, searches and seizures are unreasonable per se. State v.Kessler (1978), 53 Ohio St.2d 204, 207. There are but a few specifically enumerated exceptions to this basic rule. To survive a motion to suppress, the state bears the burden of proving that one of these exceptions applies to evidence derived from a warrantless search or seizure. Id.; State v. Smith (1991),73 Ohio App.3d 471.
One such recognized exception is the automobile exception, which allows police to conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband or other evidence subject to seizure and if exigent circumstances require a search or seizure. State v.Mills, 62 Ohio St.3d at 367. "The mobility of automobiles often creates exigent circumstances, and is the traditional justification for this exception to the Fourth Amendment's warrant requirement." Id.
This court has determined that "probable cause exists where facts known to the officer would `warrant a man of reasonable caution in the belief that the place the officer searches may contain contraband or evidence of a crime." State v.Morrison, (Apr. 5, 1996), Lucas App. No. L-95-135, unreported, quoting Texas v. Brown (1983), 460 U.S. 730, 742. In Ohio, the determination of probable cause rests with a review of the totality of the facts and circumstances known to the officer. Id., citing State v. Ratcliff (1994), 95 Ohio App.3d 199, 205.
This court agrees with the trial court's determination that, after hearing appellees discuss the sale of videotapes over the CB radio, Trooper Romero possessed a reasonable and articulable suspicion of criminal behavior, which entitled him to conduct further investigation. The state's case fell apart, however, when the troopers decided to immediately seize the truck and arrest appellees before any further investigation. At that time, the troopers lacked probable cause to effectuate an arrest. While Romero and the other troopers had reason to suspect initially that appellees may have been involved in the sale of unlicensed videos, they did not possess sufficient information to lead a cautious person to conclude that a crime was being committed at that moment. Romero testified that his suspicions of copyright infringement were based on having heard Reeves say over the radio that he was selling movies for $10 apiece, or three for $25. Romero surmised that the movies were being sold for an unusually low price, but testified that he did not know the fair market value of new videotapes. Additionally, the troopers did not know whether the videos were original tapes or illegal copies. At that time, Romero would have been justified in approaching the truck and questioning the occupants briefly, in the nature of a "Terry stop." See Terry v. Ohio (1968),392 U.S. 1.
As to the issue of the warrantless seizure of the allegedly obscene videos, police officers do not need a search warrant to seize incriminating evidence which they discover in plain view during an initial lawful intrusion. Horton v.California (1990), 496 U.S. 128, 136; see State v. Williams
(1978), 55 Ohio St.2d 82, 84. The nature of the evidence must be immediately apparent to the seizing authorities and the initial intrusion which afforded authorities the plain view must be lawful. Horton, supra. In the case before us, however, Trooper Romero testified that when he approached the passenger side of the truck and spoke to Marra, he saw a videocassette in the cab with the title "Lethal Weapon 4" handwritten on an adhesive label. This is in contrast to the facts of a similar case recently before this court. In State v. King (Dec. 23, 1999), Wood App. No. WD-99-031, unreported, this court reversed the trial court's judgment granting a motion to suppress videotapes seized during a warrantless search of a tractor-trailer rig. InKing, prior to entering the truck, the state trooper saw a video box cover that depicted nudity. In the case before us, however, the trooper did not observe any allegedly obscene videotapes in plain view when he approached appellees' truck and looked inside the cab. The only videotape Trooper Romero saw when he looked into the cab of the truck was one copy of "Lethal Weapon 4." Romero did not see any of the videos with sexually explicit covers and titles until after the warrantless search was underway.
Based on the foregoing, we find that the allegedly obscene videotapes in appellees' truck were not immediately apparent to the arresting officers in this case and that the ensuing warrantless search and seizure did not fall under the plain view exception to the warrant requirement. Thus, the trial court properly granted appellees' motion to suppress evidence and, accordingly, appellant's sole assignment of error is not well-taken.
On consideration whereof, this court finds that appellant was not prejudiced and the judgment of the Wood County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ RICHARD W. KNEPPER, P.J.
JAMES R. SHERCK, J., MARK L. PIETRYKOWSKI, J., CONCUR.