The STATE of Ohio, Appellee,

v.

McFARLAND, Appellant.

[Cite as *State v. McFarland,* 150 Ohio App.3d 396, 2002-Ohio-6353.]

Court of Appeals of Ohio,
Sixth District, Huron County.

No. H–02–015.

Decided Nov. 22, 2002.

Russell V. Leffler, Huron County Prosecuting Attorney, and Daniel Sallerson, Assistant Prosecuting Attorney, for appellee.

David J. Longo, for appellant.

---

JAMES R. SHERCK, Judge.

{¶ 1} This appeal comes to us from the Huron County Court of Common Pleas. There, appellant was convicted and sentenced for felony drug possession. Because we conclude that the trial court erred when it denied appellant's motion to suppress evidence obtained in a warrantless search, we reverse.

{¶ 2} Detective Sergeant Ricky Sexton is the lead drug investigator for the Willard, Ohio Police Department. Sexton is also the department's representative to the Metrich drug task force. On May 11, 2001, Sexton obtained information that appellant, Brent A. McFarland, and his girlfriend, Patricia Andrade, had crack cocaine at Andrade's Willard home. There is nothing in the record to indicate the source or reliability of Sexton's information.

{¶ 3} Aware that Andrade was on community control, Sexton provided Andrade's community-control supervisor, State Parole Officer Jim Zappa,[1] with this information. Upon receiving this information, Zappa decided to visit and search Andrade's home.

{¶ 4} Later that day, Zappa, accompanied by Sexton and a Huron county sheriff's captain, went to Andrade's home and were admitted by Andrade's niece. The niece advised the officers that Andrade and appellant were in Andrade's bedroom. Zappa knocked on the bedroom door and was allowed in. There, he found Andrade and appellant seated on a bed.

{¶ 5} While Zappa talked to Andrade, he ordered appellant to accompany the other officers into the kitchen. Once in the kitchen, Sergeant Sexton conducted a "pat-down" search of appellant. In the course of this search, Sexton felt a cylindrical object in appellant's pocket. According to Sexton's later testimony, he believed this object to be a crack "stem" used for smoking crack cocaine. Sexton removed the object from appellant's pocket. Scientific analysis later revealed that the "stem" contained traces of cocaine residue. This was the only evidence of drugs found in the house.

{¶ 6} On June 29, 2001, appellant was indicted on a single count of cocaine possession in violation of R.C. 2925.11(A). Appellant pled not guilty and moved to suppress the cocaine "stem" from evidence, asserting that it was the fruit of an

---

1. The state parole officer was providing courtesy probation supervision for Huron County community-control subjects.

unlawful search. When, following a hearing, the trial court denied the motion, appellant amended his plea to no contest and was found guilty as charged.

{¶ 7} Appellant now appeals this conviction setting forth the following single assignment of error:

{¶ 8} "The trial court erred to the prejudice of the defendant-appellant when it overruled his motion to suppress evidence, where such evidence was obtained through a warrantless, unreasonable seizure and search of his person, in violation of his rights under the U.S. and Ohio Constitutions."

{¶ 9} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures. Warrantless searches are unreasonable per se. *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, 7 O.O.3d 375, 373 N.E.2d 1252. To this basic rule, there are but a few specifically established exceptions. The state bears the burden of proving that one of these exceptions applies in order for evidence seized as a result of a warrantless search to survive a motion to suppress. Id.

{¶ 10} Appellant does not dispute Zappa's right to enter Andrade's house or to search both the premises and Andrade. Her status as the object of a community control order permits her community control supervisor to conduct a warrantless search either as a condition of probation,[2] see *State v. Benton* (1998), 82 Ohio St.3d 316, 695 N.E.2d 757 (consent to search at any time by express agreement), or on "reasonable suspicion" that a crime or a violation of the condition of probation is occurring. *Griffin v. Wisconsin* (1987), 483 U.S. 868, 872–873, 107 S.Ct. 3164, 97 L.Ed.2d 709. Appellant does not contest a trial court's finding that the informant tip coupled with Andrade's failing a prior drug screen provided reasonable suspicion.

{¶ 11} However, this appeal is not about evidence seized from Patricia Andrade. It is about the propriety of the search of appellant, who did not forfeit his Fourth Amendment rights by his mere presence in Andrade's house. *State v. Taylor* (1992), 82 Ohio App.3d 434, 443, 612 N.E.2d 728. Consequently, the state must show that one of the exceptions to the warrant requirement applied to appellant.

{¶ 12} During the suppression hearing, the state set forth several alternative theories to justify the search of appellant. First, the state asserted that the pat-down search was permissible under *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, to ensure officer safety.

---

**2.** "Community control" is the equivalent of probation. *State v. Cooks* (1997), 125 Ohio App.3d 116, 119, 707 N.E.2d 1176. Consequently, the cases interpreting probation are applicable in community-control situations.

{¶ 13} *Terry* requires reasonable, articulable suspicion of criminal activity to justify an investigatory stop. Id. at 22–24, 88 S.Ct. 1868, 20 L.Ed.2d 889. Additionally, officers must hold a reasonable belief that a detainee poses a threat to the officer's safety or the safety of others to justify a "pat-down" search. Id. at 28, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 14} As the trial court noted, Sergeant Sexton testified at the suppression hearing that he knew appellant and had no suspicion that appellant was armed or dangerous, but searched him because he "just happened to be there." Similarly, the third officer in the house did not observe any behavior which would lead him to suspect that appellant was armed. Officer Zappa testified that he requested the search of appellant because of adult parole "policy." In short, there was no articulable suspicion that appellant was armed or posed a threat. Alternatively, the state argued that appellant's search could be justified because Andrade might have transferred drugs to appellant before the officers entered the bedroom. Under this theory, appellant would have a status akin to a piece of furniture in the room into which Andrade could have secreted contraband. The difficulty with this metaphor, of course, is that furniture is not imbued with constitutional rights. While Andrade's status as a probationer may have justified a warrantless search of her person and her premises, an independent reason must be advanced for the search of another person who is simply there. *State v. Tucker* (1994), 98 Ohio App.3d 308, 310, 648 N.E.2d 557. A mere hunch that a probationer may have passed something to appellant is insufficient to meet this burden. See *State v. Lozada* (2001), 92 Ohio St.3d 74, 81, 748 N.E.2d 520.

{¶ 15} The state also suggests that the crack "stem" should be admissible under the doctrine of "inevitable discovery." That doctrine is a corollary to the independent-source exception to the exclusionary rule, which holds that evidence will not be suppressed if the state learns of the questioned evidence from a source separate and distinct from an illegal source. *State v. Smith* (1991), 73 Ohio App.3d 471, 477, 597 N.E.2d 1132. The inevitable-discovery rule states that if the prosecution can prove that information would ultimately or inevitably have been discovered by lawful means, it should come into evidence. Id., citing *Nix v. Williams* (1984), 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377.

{¶ 16} The state argues that Andrade's post-search confession to earlier smoking crack would have provided officers with probable cause to search appellant, a search during which the pipe would have inevitably been discovered.

{¶ 17} It is uncontested that Andrade's "confession" was made well after appellant had been searched and the pipe discovered. Indeed, it appears that the statement was not made until a drug-sniffing dog was brought into the search. Since it is not clear from the record that Andrade would have made any

inculpatory statement absent knowledge that the pipe had already been discovered, the state has failed to demonstrate that the pipe's discovery would have been inevitable.

{¶ 18}　To its credit, the trial court rejected these various arguments. However, on authority of *State v. Taylor*, supra, the trial court concluded that appellant's search was justified by the "crack house" exception to the warrant requirement.

{¶ 19}　In 1990, an informant told police that Derrick Stark was distributing crack cocaine from his Dayton home. Police obtained a search warrant for drugs. Inside the house, officers encountered Kevin Taylor emerging from a bedroom. When Taylor responded slowly to a police order to raise his hands, officers threw him against a wall, then handcuffed and searched him. In Taylor's pocket was a baggie containing crack cocaine.

{¶ 20}　Taylor was charged with drug possession and his motion to suppress denied. On appeal, the court affirmed the denial of suppression, explaining its decision in language quoted by the trial court in this matter to justify its conclusion:

{¶ 21}　"It is common knowledge that, in this day and age and in this area, drugs and weapons are frequently found in close proximity, especially in the city of Dayton; therefore, although the search warrant did not specifically authorize a search for weapons, the trial court could have concluded that it was reasonable for the police, out of concern for their own safety, to perform a *Terry* frisk for weapons upon anyone present in a suspected crack house. In *Michigan v. Summers* (1981), 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340, the Supreme Court upheld the action of police in detaining a resident of a house where a search was proceeding pursuant to a warrant. In assessing the justification for the seizure of the resident without a warrant, the Supreme Court included as 'articulable facts' supporting the seizure of the person an interest in minimizing the risk of harm to the officers. 'Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.' *Summers*, 452 U.S. at 702–703, 101 S.Ct. at 2594, 69 L.Ed.2d at 349–350. Similarly, in the present case, while there was no evidence of any especial danger to the police beyond the fact that they were executing a search warrant in a suspected crack house, we conclude that the fact alone justified a *Terry* search for weapons.

{¶ 22}　"Because of the prevalence of handguns in places where illicit drugs are distributed and sold, it would be requiring police officers to take unreasonable

risks to require them to execute search warrants of such places without being able to frisk persons present to check for weapons. We conclude that the police officers acted reasonably in frisking Taylor for weapons." *Taylor*, 82 Ohio App.3d at 444–445, 612 N.E.2d 728.

{¶ 23} We do not read *Taylor* as the establishment of a "crack house" exception to the search warrant requirement. Rather, it is, as the *Taylor* court stated in its opinion, the application of the *Terry* exception to the "particularized" facts "justifying a search in that specific instance," id. at 443, one of which is known tendency of illegal drug distribution to be accompanied by weapons.

{¶ 24} *Taylor* is distinguished from this matter in numerous ways. First, there was no premises search warrant of any kind in this case. There was a tacit admission by Sergeant Sexton in his suppression hearing testimony that the information which motivated this search likely did not rise to the probable cause sufficient to obtain a warrant. Second, there was never an allegation that the Andrade house was a crack house or that Andrade had large quantities of drugs or that she was distributing drugs. Most important, however, is that no officer testified that appellant offered any indication that he was armed or dangerous or offered any threat to police safety. This is the sine qua non of a *Terry* search. *Terry*, 392 U.S. at 28, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 25} Consequently, the warrantless search of appellant which resulted in the seizure of the evidence resulting in his conviction was not within any recognized exception to the warrant requirement. Therefore, the trial court erred in failing to suppress the fruit of that search. Accordingly, appellant's sole assignment of error is well taken.

{¶ 26} On consideration whereof, the judgment of the Huron County Court of Common Pleas is reversed. This matter is remanded to that court for further proceedings consistent with this decision. Costs to appellee.

Judgment reversed
and cause remanded.

MARK L. PIETRYKOWSKI, P.J., and PETER M. HANDWORK, J., concur.