OPINION
{¶ 1} Appellant Ryan Maple appeals the denial of his motion to suppress in the Court of Common Pleas, Stark County, Ohio. The relevant facts leading to this appeal are as follows.
 {¶ 2} On March 27, 2004, around 8:30 p.m., Officers Riley and Diels of the Canton City Police Department were on routine patrol in the area of 7th Street and Gibbs Avenue N.E. The officers characterized the neighborhood as a high crime and high drug area. Patrolman Riley claimed to be familiar with a particular residence in the 600 block of Gibbs. Officer Riley testified that he would customarily watch this house while on routine patrol. Officer Diels noted that there have been numerous complaints about the house filed with the Canton Police Department and he personally made drug arrests outside the residence as recently as two months prior to the incident in appellant's case.
 {¶ 3} Patrolmen Riley and Diels had not been dispatched to the area or received any trouble calls sending them to this residence. As they were driving by the residence, the patrolmen saw the appellant and another individual standing near the residence. Both patrolmen admitted that they had never seen appellant or the other individual before that evening nor had they ever seen either individual standing in the vicinity of the residence in question.
 {¶ 4} Neither patrolman saw the appellant speaking with anyone in the residence. The screen door to the residence was closed. At no time did either officer observe any object change hands through the door. The appellant did not make any gestures towards his pockets or hide or conceal anything on his person. The officers testified that appellant was doing nothing other than standing near the residence in question.
 {¶ 5} Officer Riley and his partner watched appellant and another individual for approximately 10 seconds. The officers slowly circled the block and returned to Gibbs N.E., where the two individuals were now walking northbound on the sidewalk. Officer Riley stopped the cruiser. The patrolmen asked that the appellant come over to the cruiser.
 {¶ 6} Officer Diels told appellant to step to the back of the cruiser and place his hands on the rear of the cruiser to enable Officer Diels to perform a Terry pat-down search. Officer Diels testified that he routinely pats-down people for officer's safety; his concern in this incident was high-crime, drug area. Officer Riley observed a crack pipe roll across the trunk of the cruiser when appellant put his hands on the trunk of the cruiser. Officer Riley advised Officer Diels what he had observed. Appellant was arrest for possession of drug paraphernalia. Crack-cocaine and a small amount of marijuana were found on appellant's person.
 {¶ 7} There was conflicting testimony from the officers as to whether appellant was Mirandized once inside the police cruiser. Officer Diels testified he did not recall whether appellant was Mirandized or not. Officer Riley testified that after being Mirandized, appellant stated that he has a problem with crack-cocaine and he goes on a binge every few months. Appellant stated that he cannot remain "on the wagon" despite the fact that he has a son of his own at home.
 {¶ 8} On May 29, 2004, the Stark County Grand Jury indicted appellant on one count of possession of cocaine, a felony of the fifth degree, in violation of R.C. 2925.11 and one count of Possession of Drug Paraphernalia, a misdemeanor of the fourth degree, in violation of R.C.2925.14.
 {¶ 9} A suppression hearing was held on June 14, 2004. At the conclusion of the hearing, the trial court denied appellant's motion to suppress.
 {¶ 10} On June 21, 2004, the trial court accepted appellant's plea of no-contest and subsequently found appellant guilty as charged. After a completion of a presentence investigation report, the appellant was placed on probation. He was further sentenced to a period of three years community control and his driver's license was suspended for six months.
 {¶ 11} Appellant timely filed a notice of appeal raising the following two assignments of error:
 {¶ 12} "I. The trial court erred in denying appellant's motion to suppress the illegally obtained physical evidence.
 {¶ 13} "II. The trial court erred in denying appellant's motion to illegally suppress the obtained statements."
 I. {¶ 14} Appellant in his first assignment of error challenges the trial court's denial of his Motion to Suppress.
 {¶ 15} There are three methods of challenging on appeal the trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning
(1982), 1 Ohio St. 3d 19, 437 N.E. 2d 583; State v. Klein (1981),73 Ohio App. 3d 486, 597 N.E. 2d 1141; State v. Guysinger (1993),86 Ohio App. 3d 592, 621 N.E. 2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App. 3d 37, 619 N.E. 2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v.Curry (1994), 95 Ohio App. 3d 93, 641 N.E. 2d 1172; State v. Claytor
(1993), 85 Ohio App. 3d 623, 620 N.E. 2d 906.
 {¶ 16} A Terry stop requires the officer have specific, objective and articulable facts; it is not enough for the officer to express a generalized suspicion. Sibron v. New York (1968), 392 U.S. 40, 64; Statev. Chatton (1984), 11 Ohio St.3d 59.
 {¶ 17} The purpose of the stop and momentary detention recognized inTerry, supra, is to confirm or dispel any suspicion that the circumstances and the suspect's behavior may have aroused. While the initial stop may be supportable, it does not justify detention or further inquiry when the suspicion to support the stop is immediately dissipated by facts readily apparent to the officer. Wadsworth v. Tomer (1994) 73 Oh. Misc. 2d 27. Any additional intrusion or detention must be supported by specific articulable facts demonstrating the reasonableness of the continued detention. State v. Chatton (1984) 11 Ohio St. 3d 59, State v.Hart (1988) 61 Ohio App. 3d 37. Id. Terry, supra, requires the least minimal intrusion possible to investigate the suspicious circumstances. The stop does not automatically justify a pat down search or frisk. Such a search must be independently supported and is limited to a search for weapons based upon the Officer's obligation to articulate reasonable, particular facts that her safety was endangered. Sibron v. New York (1968)392 U.S. 40, State v. Sutherland (1994) Ohio App. 3d 840, State v. Hines
(1993) 92 Ohio App. 3d 163.
 {¶ 18} However, an officer is authorized to conduct an investigatory stop of an individual if the officer has a reasonable articulable suspicion that criminal activity is afoot. Ohio Courts have followed Supreme Court case law and developed a two-step analysis to assess the reasonableness of a stop and frisk seizure. First, the propriety of the investigative stop is determined; and second, the basis for and scope of the protective frisk/search is analyzed. State v. Andrews (1991)57 Ohio St. 3d 86, 87; Terry, supra at 19-20. In short, the totality of the surrounding circumstances must provide a reasonable and prudent officer with an objective and particularized suspicion that criminal activity is afoot in order to justify a seizure and pat down of a suspect who is believed to be armed and dangerous. Andrews, supra at 87-8; Statev. Bobo (1988), 37 Ohio St.3d 177, 180.
 {¶ 19} The Fourth District Court of Appeals in State v. Horsely
(January 25, 1999), Ross Co. App. No. 98CA2423, noted: "however, that law enforcement officers are not required to rule out all possibilities of innocent behavior before initiating an investigative stop. United Statesv. Holland (C.A.9, 1975), 510 F.2d 453. Conduct consistent with innocent behavior may give rise to a reasonable suspicion of criminal activity.United States v. Soklow (1989), 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1;United States v. Gomez (C.A.5, 1985), 776 F.2d 542. Additionally, we note that the requisite level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. Soklow. The question is whether an officer `could reasonably surmise that the [person] they stopped was engaged in criminal activity.' United States v. Cortez
(1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621. Surmise means to `form a notion on slight proof.'" Id.
 {¶ 20} In a case very similar to the case at bar, this court recently noted: "we find that the officer did not have a reasonable and articulable suspicion of criminal drug activity to support an investigative stop of appellant. There is no indication that the house in question was being used to sell drugs at or near the point in time in which appellee entered the home. While each case must be considered individually and there are no specific requirements or formulas to find reasonable and articulable suspicion, we point out, by way of example, that there was no other traffic in or out of the house to indicate the current sale of drugs, there were no visible exchanges between visitors to the house and the house's occupants and no recent arrests for the selling or purchasing of drugs in the house. In short, on this night, there were no other indications of illegal drug activity than one known drug user going to the house and only staying a few minutes. Upon review of the totality of the circumstances, we find there were no reasonable, articulable facts upon which the officer could base a Terry stop". Statev. Knight (Dec. 28, 2004), Licking App. No. 04CA24 at ¶ 14.
 {¶ 21} In the case sub judice, we also find that the officer did not have a reasonable and articulable suspicion of criminal drug activity to support an investigative stop of appellant. The officers only observed appellant at the home for ten seconds or less. The officers did not recognize appellant or his companion. There were no visible exchanges between the appellant and anyone in the home. There was no evidence of other traffic in or out of the house to indicate the current sale of drugs, and no recent arrests for the selling or purchasing of drugs in the house. There is no evidence as to how long appellant had been at the door or whether anyone was even inside the home at the time. In short, on this night, there were no other indications of illegal drug activity than appellant and the other individual standing outside the home in the vicinity of the side door. Upon review of the totality of the circumstances, we find there were no reasonable, articulable facts upon which the officer could base a Terry stop. State v. Knight (Dec. 28, 2004), Licking App. No. 04CA24 at ¶ 14.
 {¶ 22} Accordingly, appellant's first assignment of error is sustained.
 II. {¶ 23} In his second assignment of error appellant alleges that the trial court erred by not suppressing his statements made to the officer concerning his crack cocaine usage. We agree.
 {¶ 24} Searches and seizures conducted without a warrant, without probable cause, and not incident to lawful arrest, violate theFourth Amendment to the United States Constitution, and all fruits thereof are subject to suppression. Mapp v. Ohio (1961) 367 U.S. 643; Wong Sun v.United States (1963), 371 U.S. 471. "The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion. It follows from our holding in Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679,5 L.Ed.2d 734, that the Fourth Amendment may protect against the overhearing of verbal statements as well as against the more traditional seizure of `papers and effects.' Similarly, testimony as to matters observed during an unlawful invasion has been excluded in order to enforce the basic constitutional policies. McGinnis v. United States, 1 Cir., 227 F.2d 598. Thus, verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the `fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion. Wong Son,
supra at 485. There is no indication that appellant would have made any incriminating statements absent the illegal stop and frisk. State v.McFarland (2002), 150 Ohio App.3d 396, 2002-Ohio-6353, 781 N.E.2d 1045.
 {¶ 25} Accordingly, appellant's second assignment of error is sustained.
 {¶ 26} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is reversed and the cause is remanded to the trial court for further proceedings in accord with law and consistent with this opinion.
Gwin, P.J., Farmer, J., and Wise, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is reversed and the cause is remanded to the trial court for further proceedings in accord with law and consistent with this opinion. Costs to appellee.